UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |  | |
|---|---|---|---|
| Christopher Clark | ) | | |
| Plaintiff, | ) | | |
| v. | ) | | CASE NO |
| | ) | | |
| | ) | | COMPLAINT |
| City Of New York; Correction Officer | ) | | JURY TRIAL DEMAND |
| "John" McQueen-Shield No. 9181; | ) | | |
| Police Officer "John" Simmons Shield | ) | | |
| No. 2275; Corrections Officers John | ) | | |
| Does 1 – 3 | ) | | |
| Defendants. | ) | | |

_____

**PRELIMINARY STATEMENT**

1.      Christopher Clark was subjected to horrific conditions while incarcerated at Rikers Island. These conditions included violence from correction officers, violence from other inmates that was assisted by correction officers that resulted in hospitalization, and violence and threats from other inmates that caused him to attempt suicide.

2.      Mr. Clark brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his rights under the Constitution of the United States of America and the New York State Constitution.

1

**JURISDICTION AND VENUE**

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth , Eighth, and Fourteenth Amendments to the United States Constitution, as well as the New York State Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Mr. Clark's claims arise under law of the United States and seek redress of the deprivation under color of state law of rights guaranteed by the United States Constitution.

4. Venue lies in the Southern District of New York under 28 U.S.C.§ 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in the District.

**STATE LAW CLAIMS PREREQUISITES**

5. That within 90 days after the state law claim of, *inter alia*, Negligence accrued, plaintiff served a Notice of Claim, in writing, sworn by the claimant, containing the name and post office address of the plaintiff and plaintiff's attorney, the nature of the claim, the time when, the place and the manner by which the claim arose, the items of damage and the injuries claimed to have been sustained, to be served upon the defendants by delivering a copy thereof to the person designated by law as a person to whom such claims may be served.

6. That plaintiff appeared for a hearing pursuant to § 50-H of the General Municipal Law on or about October 07, 2021.

7. That the defendants have not adjusted, settled the claim since the Notice of Claim was served and it has exceeded 30 days.

8. That this claim has been commenced and this action has been started within one year and ninety days after the accrual of the state law violation upon which the New York State law claims are based.

9. That an Amended NOC was filed and served on July 01, 2022.

10. That all conditions and requirements precedent to the commencement of this action have been complied with.

## THE PARTIES

11. Plaintiff Christopher Clark is a resident of Bronx County - Bronx, New York.

12. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the New York City Department of Corrections ("NYCDOC"), a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of correction officers and supervisory correction officers, including the individually named defendants herein. The City of New York is sued pursuant to General Municipal Law - GMU § 50.

13. Defendant Police Officer "John" McQueen – first name fictitious because it is unknown - ("Officer McQueen") was at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the NYCDOC, acting under color of law and in her individual capacity within the scope of employment pursuant to the

3

statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYCDOC.  They are sued in their individual capacity.

14. Defendant Police Officer "John" Simmons – first name fictitious because it is unknown - ("Officer Simmons") was at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the NYCDOC, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYCDOC.  They are sued in their individual capacity.

15. Defendant Police Officer John Does 1 – 3 – names unknown - were at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the NYCDOC, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYCDOC.  They are sued in their individual capacity.

## JURY DEMAND

16. Plaintiff Christopher Clark demands a jury trial.

## STATEMENT OF FACTS

**Correction Officers take Plaintiff to a Bloods Gang Housing Unit Knowing That He Will Be Attacked And Injured.**

17. On or about June 19, 2021, ESU officers came to Intake where Plaintiff was located, with the intent to take him Five Upper North.  ESU Officers taking Plaintiff to Five Upper North also increased the likelihood of Plaintiff being assaulted, as other inmates will think that Plaintiff is a problem.

4

18. Five Upper North is a notorious housing unit controlled by the infamous gang imported from California, called the Bloods. Inmates who had been placed in this facility, who were not members of this Gang, were consistently assaulted and attacked.

19. Plaintiff has never identified as gang member prior to, during, or after his incarceration.

20. Prior to being forcefully transported to Five Upper North, Plaintiff was denied food by Correction Officers, denied access to the bathroom, and Correction Officers displayed a contemptuous disrespect for Plaintiff's rights.

21. Plaintiff was previously told that he would be taken to Four Upper North in another area, but Correction Officers inexplicably changed his placement to Five Upper North.

22. While being transported to Five Upper North, one officer bent Plaintiff's wrist acting as if he would break it. Plaintiff did not resist being taken in any way.

**Plaintiff is Forced To Attempt Suicide To Get Removed From The Unit**

23. From the moment that Plaintiff entered the housing area, Bloods gang members in the housing area threatened him. Plaintiff was terrified to come out his cell.

24. When the gang members realized that Plaintiff would not leave his cell, they attempted to set his cell on fire. The gang members also attempted to throw urine at Plaintiff inside the cell.

25. Plaintiff attempted to negotiate with the gang members in order to attempt to stay in the unit without violence, but was unable to change their minds.

5

26. Plaintiff repeatedly complained to the Captain and other officers regarding his treatment and fears, but he was consistently ignored. Plaintiff made complaints in writing as well as verbally.

27. Plaintiff was told by a Gang leader, David Carter, that the only way that he would leave the unit if he killed himself.[1]

28. Plaintiff, desperate and depressed, used his bed sheet to attempt to hang himself.

**Plaintiff is Assaulted By Other Inmates With The Assistance Of Correction Officers**

29. Officer McQueen, Shield #9181, saw Plaintiff hanging in his cell.

30. Officer McQueen entered the cell, and attempted to transport Plaintiff to the mental health unit.

31. When the other inmates saw that Christopher Clark was out of his cell, they were enraged and were yelling and screaming that they wanted to attack Plaintiff.

32. The gang members told Officer Simmons, Shield #2275, to open the gate separating the gang members from Plaintiff so they could assault him.

33. Mr. Clark begged and pleading to the cameras and the officers for them not to open the gate.

34. Officer Simmons and McQueen popped open that gate, and gang leader David Carter and other inmates ran out to attack him.

---

[1] David Carter has been charged with Murder in the 2nd Degree. As of July 01, 2022, his case is still pending.

35. The gang members hit him in the right eye, the middle of the forehead, his chin, and right ear.

36. Outside of the pain from the attack, Plaintiff still suffer debilitating headaches

37. None of the aforementioned acts were protected by legal privilege, nor were such acts legally justified. Said occurrence and the injuries and damages sustained by claimant were due solely to the negligence, carelessness, recklessness and willful misconduct of the CITY OF NEW YORK, its agents, servants and/or employees.

38. As a result of the defendants' conduct, plaintiff has been caused to suffer, *inter alia*, severe anxiety, humiliation, and embarrassment, damage to personal reputation, physical injury, apprehension, , emotional and psychological trauma, loss of income, and violation of rights under the New York Constitutions, and applicable statutory and case law.

## CLAIMS FOR RELIEF

### Claim I: Monell Claim Under 42 U.S.C. § 1983
*Against City of New York*

39. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

40. The violence against Mr. Clark by Correction Officers and other inmates is not an isolated incident. It is due to the deliberate indifference by the City of New York against the culture of violence prevalent at Rikers Island, including but not limited to, the Correction Officers.

41. The conditions on Rikers Island fell well below minimum constitutional standards years before the pandemic reached New York City, and Rikers has long been known as one of the worst jails in the country. In 2021, then-DOC Commissioner Vincent Schiraldi called conditions the Island a "humanitarian crisis."

42. The DOC's classification system (a method by which the facilities separate detained persons with prior violent histories with one another or who are affiliated with rival gangs) has all but disappeared. Staff and guards are ignoring these affiliations and placing persons who have been ordered separate into the same dorms or even the same cells, leading to violent outbursts and serious injuries to detained persons and guards alike.

43. Incarcerated persons are manning the guards' stations, answering phones, and determining who can enter and exit certain areas, while guards are utilizing mace indiscriminately and giving detained persons make-shift weapons, instigating violence and further contributing to disorder. Civilian employees report watching as uniformed staff stand by and merely observe the chaos, either out of sheer fear of intervening or callousness toward the state of affairs.

44. These conditions have led to a reasonable, universal fear amongst the incarcerated population that they are under a real and constant threat of violence, whether it be excessive force by guards or violence at the hands of their fellow detained persons. This fear is exacerbated by the fact that DOC staff is unlikely to intervene in violent encounters, and that injured persons will not be afforded a timely, adequate medical response if they become the victim of such violence.

45. Southern District Court Judge Swain, who oversees the court-ordered monitorship at Rikers, has described Rikers as suffering from "extremely dangerous" conditions "in which every single day people are in danger."[2] A special report filed by the monitoring team in March 2022 described "unacceptable levels of fear of harm" resulting from dysfunctional staff management and deployment practices at the Department of Correction.[3]

46. As early as 2014, the U.S. Attorney for the Southern District of New York reported on this "pervasive" and "deep-seated culture of violence" across Rikers Island, noting that "DOC staff routinely utilize[s] force not as a last resort, but instead as a means" of "control" and to "punish disorderly or disrespectful behavior."[4]

47. In 2018, the New York City Comptroller's Office found that, despite a declining detainee population, rates of violent incidents and uses of force continued to increase.[5] There were approximately 1,354 fights or assaults per 1,000 average daily population in 2018, compared with only 441 ten years earlier in 2008.[6]

---

[2] *See* Transcript of Remote Conference at 6:17, *Nunez v. City of New York, et al.*, 11-cv-5845 (LTS) (S.D.N.Y. Apr. 26, 2022), ECF No. 456.

[3] *See* Special Report of the *Nunez* Independent Monitor at 4, *Nunez v. City of New York et. al.*, 11-cv-5845 (LTS)(JCF) (S.D.N.Y. Mar. 16, 2022), ECF No. 438.

[4] *See* Special Report of the *Nunez* Independent Monitor at 3, *Nunez v. City of New York et. al.*, 11-cv-5845 (LTS)(JCF) (S.D.N.Y. Mar. 16, 2022), ECF No. 438.

[5] *See* NYC Comptroller, Press Release, *Despite a Decline in Incarceration, Correction Spending, Violence, and Use of Force Continued to Rise in FY 2018* (Jan. 22, 2019), https://comptroller.nyc.gov/newsroom/comptroller-stringer-despite-a-decline-in-incarceration-correction-spending-violence-and-use-of-force-continued-to-rise-in-fy-2018/.

[6] *Id.*

48. In 2020, uses of force by guards against detained persons rose 183 percent from 2016. More than half of these incidents were found to be avoidable or problematic, and around 30 percent were determined to be excessive or violative of the DOC's use of force policies.[7]

49. In 2021, the rate at which guards used force against detained persons was 200 percent higher than the rate in 2016 that gave rise to the Nunez consent decree.[8] There were a total of 419 slashings and stabbings on the Island that year, up 1,097 percent from 2011, despite a steadily declining incarcerated population.[9] More than 1,900 detained persons suffered lacerations, concussions, or broken bones, and at least 450 of those were so severely injured that they were hospitalized.[10] Given the pervasive failures of DOC staff to take injured people for prompt (or any) medical treatment, the actual rate of hospitalizations is likely much higher, evidencing the City's de facto policy of underreporting serious injuries.[11]

50. Moreover, the severity of violent incidents on the Island are frequently downplayed and misrepresented in official DOC reports, creating an inaccurate record of the

---

[7] *See* Eleventh Report of the *Nunez* Independent Monitor at *26, *Nunez v. City of New York et. al.*, 11-cv-5845 (LTS)(JCF) at *26 (S.D.N.Y. May 11, 2021), ECF No. 368.

[8] Griffin Kelly, "Stabbings and slashings surge on Rikers Island," New York Post (May 14, 2022), https://nypost.com/2022/05/14/rikers-island-sees-surge-of-stabbings-and-slashings/ (citing figures shared during a public DOC meeting).

[9] *Id.*

[10] Jan Ransom and William K. Rashbaum, *How Brutal Beatings on Rikers Island Were Hidden from Public View*, N.Y. Times (March 2, 2022), https://www.nytimes.com/2022/03/02/nyregion/nyc-jail-beating-rikers.html.

[11] NYC Board of Correction, "Serious Injury Reports in NYC Jails January 2019," (Jan. 2019) https://www1.nyc.gov/assets/boc/downloads/pdf/Reports/BOC-Reports/2019.01.07%20-%20BOC%20 Serious %20Injury%20Report%20-%20Final.pdf.

actual prevalence of injuries and staff assaults on Rikers, and preventing oversight agencies or the federal monitor from accurately assessing the pervasiveness of violence on the Island.[12]

51. The City has a policy, practice, and custom of deliberate indifference to the deplorable conditions of confinement of people incarcerated on Rikers Island.

52. The City of New York has and had a de facto policy of improperly staffing Rikers Island, failing to properly hire and train qualified correction officers, failing to properly manage correction officers and staff at Rikers Island, and failing to keep Rikers Island's facilities in proper working order. The City's policy of failing to train correction officers in preventing and responding to violence, self-harm, and structural hazards on the Island was done with deliberate indifference to the constitutional rights of people incarcerated at Rikers.

53. The City of New York, including final policy makers at the DOC, and the mayor himself, have been aware of the problems detailed in this Complaint for many years. Since at least 2018, these same final policymakers knew the situations was deteriorating. But they did nothing.

54. The direct and inevitable result of the City of New York's policies are the multiple deprivations of the incarcerated persons' and Plaintiffs' constitutional rights. Some driving forces behind the horrible conditions at Rikers are the failure to properly staff the jails, the failure to train the people working there, the failure to discipline and hold staff accountable for misconduct, and the failure to keep the jails in proper working order.

---

[12] *See* Jan Ransom, *In N.Y.C. Jail System, Guards Often Lie About Excessive Force*, N.Y. Times (Pub. Apr. 24, 2021, Updated Sept. 22, 2021), https://www.nytimes.com/2021/04/24/nyregion/rikers-guards-lie-nyc-jails.html.

55. The conditions of confinement on Rikers Island violate the most basic rights afforded by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

### Claim II: Negligence Under NY State Law
*Against City of New York*

57. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

58. In assuming physical custody of Plaintiffs, the City undertook a duty of care to, inter alia, safeguard them from an unreasonable risk of damage to Plaintiffs' and the Class members' health and physical and mental soundness.

59. The City's violation of their duty of care to plaintiffs was a direct and proximate cause and a substantial factor in bringing about their damages as outlined above, and, as a result, defendant is liable to plaintiff.

60. As a result of DEFENDANTS' impermissible conduct, Plaintiff demand judgment against DEFENDANTS in a sum of money to be determined at trial.

### Claim III: Assault and Battery Under NY State Law
*Against Officer John Doe*

61. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

62. That, on or about June 19, 2021, DEFENDANTS, who were acting within the scope of their employment with the DEFENDANT, THE CITY OF NEW YORK, at the aforesaid location.

63. That, on or about June 19, 2021, DEFENDANTS committed an assault and battery knowingly, intentionally and willfully.

64. That, on or about June 19, 2021 the individual DEFENDANTS who committed the aforementioned assault and battery upon the Plaintiff were acting within the scope of their employment with the Defendant, The City of New York.

65. That on or about June 19, 2021 the assault and battery on the Plaintiff was without probable cause and was not the result of a lawful arrest.

66. By reason of the foregoing, DEFENDANTS are liable to Plaintiff for damages.

### Claim IV: Prima Facie Tort Under NY State Law
*Against All Defendants*

67. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

68. Defendants intentionally inflicted harm, resulting in damages, without excuse or justification, by an act or. series of acts, excusing the foregoing claims, that were otherwise lawful.

69. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### Claim V: Negligent Supervision, Retention, and Training Under NY State Law
*Against Defendant City of New York*

70. Plaintiffs realleges the preceding paragraphs as if set forth here.

71. Defendant City of New York failed to use reasonable care in the training and supervision of Correction Officers who, negligently injured, and violated the constitutional rights of Plaintiff.

72. As a direct and proximate result of Defendant's negligence, Plaintiffs suffered serious bodily injury, emotional distress and mental anguish, costs, and expenses, and was otherwise damaged and injured.

### Claim VI: Violations of the New York State Constitution
*Against All Defendants*

73. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

74. By virtue of the aforementioned acts, the Individual Defendants are liable to Plaintiff for violating his right to due process under Article I § 6 of the New York State Constitution, and her right to be free of unreasonable and unlawful searches and seizures under Article I § 12 of the New York State Constitution.

75. Defendant City of New York is liable for these violations of the New York State Constitution under the principle of *respondeat superior*. nsequently, the individual officers and the City of New York are liable to Plaintiff for compensatory and punitive damages.

### Claim VII: Failure To Intervene Under 42 U.S.C. § 1983
*Against Defendant John Does 1-3*

76. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

77. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct, had a duty to intervene and prevent such conduct and failed to intervene.

78. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

79. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### Claim VIII: Conspiracy Under NY State Law
*Against Defendants McQueen, Simmons*

80. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

81. Defendants McQueen and Simmons and John Doe 2, made an agreement with the gang members in the facility, to allow them to assault and attack Plaintiff.

82. In furtherance of this conspiracy, Defendants opened the gate and allowed the gang members to enter the area to assault Plaintiff. This act was done intentionally.

83. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiffs demand the following relief against Defendants:

a. Compensatory damages in an amount to be determined at trial;
b. Punitive Damages;
c. Reasonable costs and attorneys' fees under 42 U.S.C. § 1988;
d. Pre- and post-judgment interest to the fullest extent permitted by law; and
e. Any additional relief the Court deems just and proper.

DATED: this 1st Day of July 2022                New York, New York

Yours, etc.

Lord Law Group PLLC

_____
Masai I. Lord, Esq.
14 Wall St., Ste 1603
New York, NY 10279
718-701-1002

*Counsel for Plaintiff Christopher Clark*