UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                          :
CHRISTOPHER CLARK,                        :
                                          :   **ORDER AND OPINION**
                            Plaintiff,    :   **GRANTING IN PART AND**
          -against-                       :   **DENYING IN PART**
                                          :   **DEFENDANTS' MOTION TO**
CITY OF NEW YORK; CORRECTION              :   **DISMISS**
OFFICER "JOHN" McQUEEN-SHIELD NO.         :
9181; POLICE OFFICER "JOHN" SIMMONS       :   22 Civ. 5647
SHIELD NO. 2275; CORRECTIONS OFFICERS     :
JOHN DOES 1-3,                            :
                                          :
                            Defendants.   :
                                          :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

   Plaintiff Christopher Clark ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 and New York State law on July 11, 2022, alleging that the City of New York (the "City"), Police Officer "John" McQueen ("McQueen"), Police Officer "John" Simmons ("Simmons"), and three unnamed police officers ("John Does 1-3," and, collectively with the City, McQueen, and Simmons, the "Defendants"), violated his rights under the United States and New York State Constitutions and engaged in tortious conduct under New York State law. The City moved to dismiss the complaint on September 9, 2022 (ECF No. 13), and Plaintiff responded by filing his First Amended Complaint ("FAC") (ECF No. 15). The City subsequently filed the instant motion to dismiss the FAC (ECF No. 18) pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").[1] For the reasons stated below, the Motion is DENIED with respect to Claim One and GRANTED as to all other claims.

---

[1] Although the Motion was made by the City alone, it seeks to dismiss the FAC in its entirety, including claims within the FAC that concern only McQueen, Simmons, and John Does 1-3. I will consider the City's arguments with respect to all of the claims and all Defendants.

1

# THE COMPLAINT

## *Claims*

The FAC alleges eight claims. Plaintiff's New York State Law *prima facie* tort claim (Claim Four) and New York State Constitution claim (Claim Six) are alleged against all Defendants. FAC ¶¶ 67–69, 73–75.[2] Plaintiff's 42 U.S.C. § 1983 *Monell* claim (Claim One), his New York State Law negligence claim (Claim Two), and his New York State Law negligent supervision claim (Claim Five) are alleged against the City. *Id.* ¶¶ 46–70, 57–60, 70–72. Plaintiff's New York State Law assault and battery claim (Claim Three) and his 42 U.S.C. § 1983 failure to intervene claim (Claim Seven) are alleged against John Does 1-3. *Id.* ¶¶ 61–66, 76–79. Finally, Plaintiff's claim for "Conspiracy Under NY State Law" (Claim Eight) is alleged against McQueen and Simmons. *Id.* ¶¶ 80–83.

Plaintiff seeks compensatory damages, punitive damages, reasonable costs and attorneys' fees, and pre- and post-judgment interest.

## *Background*

The following facts are taken from the FAC, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was incarcerated at Rikers Island. *Id.* ¶ 1. On or around June 19, 2021, Plaintiff was placed in the Five Upper North housing unit within Rikers Island, which "is a notorious housing unit" effectively controlled by the Bloods gang. *Id.* ¶¶ 17, 20. Corrections officers were aware that Plaintiff was not associated with the Bloods and knew that unaffiliated inmates "were consistently assaulted and attacked" when housed in Five Upper North. *Id.* ¶¶ 21–23. Corrections officers knew also that Plaintiff had prior negative interactions with members of the

---

[2] Plaintiff has since agreed to the dismissal of Claims Four and Six. Pls.' Br. 1. The Motion is therefore granted with respect to those claims.

2

Bloods gang. *Id.* ¶ 24. Corrections officers thus knew that Plaintiff would or was at least likely to be subject to threats or violence if he was placed in Five Upper North, but Plaintiff was nonetheless placed there after corrections officers "inexplicably changed" his housing assignment from a different area to Five Upper North. *Id.* ¶¶ 25–26.

Once moved to Five Upper North, Plaintiff was in fact subjected to threats and attempts of violence by other inmates in the housing area. In addition to making verbal threats, other inmates threw a flaming object into Plaintiff's cell and threw urine at Plaintiff and onto his possessions. *Id.* ¶¶ 28–31. Plaintiff made both written and verbal complaints to various officers concerning the situation, all of which were ignored. *Id.* ¶ 32. Ultimately, Plaintiff attempted to take his own life out of fear and desperation and at the urging of another inmate closely affiliated with the Bloods gang. *Id.* ¶¶ 33–34.

Immediately following his attempted suicide, while officers Simmons and McQueen were transporting Plaintiff from his cell to the mental health unit, several inmates asked the officers to open a gate and permit them to assault Plaintiff. *Id.* ¶¶ 35–38. Despite Plaintiff's pleas, the officers opened the gate and the inmates assaulted Plaintiff, hitting him in his eye, forehead, and ear. *Id.* ¶¶ 39–41.

Plaintiff's treatment was not a coincidence, but a consequence of an implicit policy and culture of indifference within Rikers Island towards inmate-on-inmate. *See id.* ¶¶ 47–60. As a result of the treatment described above, Plaintiff continues to suffer "debilitating headaches . . . severe anxiety, humiliation, embarrassment, damage to personal reputation, physical injury, apprehension, emotional and psychological trauma, [and] loss of income...." *Id.* ¶¶ 43, 45.

3

## LEGAL STANDARD

In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court accepts as true Plaintiff's well-pled factual allegations and draws all reasonable inferences in Plaintiff's favor. *See Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018) (*citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *Sec. & Exch. Comm'n v. Thompson*, 238 F. Supp. 3d 575, 587 (S.D.N.Y. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Tanvir*, 894 F.3d at 458 (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### 1. Claim One

Plaintiff brings his first claim under 42 U.S.C. § 1983 for unconstitutional conditions of confinement in violation of the Fourteenth and Eighth Amendments. FAC ¶¶ 46–70. A condition of confinement claim consists of two prongs. First, the plaintiff must show an objective deprivation of his constitutional rights by alleging that the conditions faced, either alone or in combination, posed an unreasonable risk of serious damage to his present or future health. *Darnell v. Pineiro*, 849 F.3d 17, 29–30 (2d Cir. 2017). Second, the plaintiff must allege that the officers acted with at least deliberate indifference—*i.e.*, recklessness—to the challenged conditions. *Id.* at 29; *see also Vail v. City of New York*, 2020 WL 3548074, at *3–4 (S.D.N.Y. May 15, 2020). In order to bring a § 1983 claim against a municipality such as the City, the plaintiff must allege that the constitutional violation resulted from the municipality's official policy or custom. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–94 (1978). Plaintiff has sufficiently alleged facts satisfying each of these elements.

Plaintiff alleges that he faced significant threats of physical violence from other inmates, and that said inmates made attempts to injure Plaintiff, as a result of his placement and continued confinement in Five Upper North. FAC ¶¶ 28–31. Plaintiff alleges also that, in one instance, he was physically attacked by a group of other inmates after McQueen and Simmons permitted them to do so. *Id.* ¶¶ 35–41. These allegations, taken as true, suffice to establish that the conditions Plaintiff faced in Five Upper North posed an unreasonable risk of serious damage to his present and future health, and therefore constituted an objective deprivation of Plaintiff's rights. *See Darnell*, 849 F.3d at 29–32; *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012).

Plaintiff also has sufficiently alleged that the Rikers officers—including McQueen and Simmons—acted with deliberate indifference towards the conditions Plaintiff faced. Plaintiff alleges that the threats and violence he faced were predictable, FAC ¶ 25, and that his repeated complaints about the situation were routinely dismissed, *id.* ¶ 32. These allegations, if true, suffice to establish deliberate indifference. *See Darnell*, 849 F.3d at 35.

Finally, Plaintiff has alleged facts adequately supporting municipal liability: the conditions he faced were a consequence of the City's *de facto* policy and custom of indifference towards inmate-on-inmate violence, as evidenced by public reports showing that rising levels of inmate-on-inmate violence at Rikers have gone unabated. *See* FAC ¶¶ 47, 54–55, 57, 62–63, 68, 69. Such allegations are sufficient to support a claim of municipal liability under *Monell*. *See, e.g., Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009) ("A municipality may be found to have a custom that causes a constitutional violation when 'faced with a pattern of misconduct[, it] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir.2007))); *Felix v. City of New York*, 344 F. Supp. 3d 644, 658

5

(S.D.N.Y. 2018) ("Plaintiffs may adequately plead the existence of de facto customs or policies based on governmental reports documenting constitutional deficiencies or misconduct.").[3]

The Motion is denied as to Claim One.

## 2. Claim Two

Plaintiff brings his second claim for negligence under New York State law. FAC ¶¶ 57–60. In addition to the standard elements of negligence, Plaintiff must allege that the City owed him a "special duty." *Applewhite v. Accuhealth, Inc.*, 995 N.E.2d 131, 135 (N.Y. 2013). A special duty exists where: "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition." *Id.* Even if Plaintiff satisfies that requirement, governmental function immunity bars his second claim if the City establishes that its employees were exercising a governmental function, the negligent act involved the exercise of discretion, and that said discretion "was in fact exercised in relation to the conduct on which liability is predicated." *Ferreira v. City of Binghamton*, 194 N.E.3d 239, 248 (N.Y. 2022). Plaintiff's second claim fails for two reasons.

*First*, "it is the plaintiff's obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself." *Id.* Plaintiff has not alleged that the City owed him a special duty of care when they housed him in Five Upper North or transported him from his cell.

---

[3] The City's arguments on causation, Def.'s Br. 13–15, are without merit. Taken with the facts contained in the reports cited by Plaintiff concerning rising inmate-on-inmate violence at Rikers, Plaintiff's allegations are sufficient at this stage to support a reasonable inference that the City's policy of indifference was a moving force behind Plaintiff's injury. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 401–02 (S.D.N.Y. 2021) (finding that the plaintiff sufficiently alleged causation where the alleged misconduct was "factually similar" to conduct detailed in reports supporting the existence of a *de facto* policy).

*Second*, even if Plaintiff had adequately alleged the existence of a special duty, the governmental function immunity defense also applies. Placing plaintiff within a housing unit and removing him from his cell for medical care reflected discretionary judgments by the corrections officers, who were exercising a governmental function. *See Verizon New York, Inc. v. Vill. of Athens*, 840 N.Y.S.2d 484, 486 (3d Dep't 2007) (explaining that discretionary acts supporting immunity "involve the exercise of reasoned judgement" whereas ministerial acts envision "direct adherence to a governing rule or standard with a compulsory result.").

The Motion is therefore granted as to Claim Two.

### 3. Claims Three and Seven

Plaintiff brings his third and seventh claims against only John Does 1–3. For purposes of both his state- and federal-law claims, whether Plaintiff may maintain suit against unnamed defendants is governed by New York law, and specifically NY CPLR § 1024. *See Cotto v. City of New York*, 2017 WL 3476045, at *4–5 (S.D.N.Y. Aug. 11, 2017), *aff'd* 2020 WL 1228765 (2d Cir. Mar. 13, 2020). In order to take advantage of that provision, plaintiffs must (1) exercise sufficient diligence to attempt to ascertain the defendant's identity prior to suit and (2) describe the unknown defendant in a manner that would fairly apprise them of the fact that they are the intended defendant. *See Bumpus v. New York City Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009); *Thas v. Dayrich Trading, Inc.*, 913 N.Y.S.2d 269, 271 (1st Dep't 2010). Plaintiff has not satisfied either requirement.

Plaintiff makes no attempt to describe what efforts, if any, he made to identify John Does 1–3 prior to commencement of this litigation. Plaintiff states that their "names [are] unknown," FAC ¶ 15, but does not allege the time, place, and activities that could function as identifying details. Nor does Plaintiff allege specific facts about the conduct of John Does 1–3 relevant to

Claims Three or Seven. Instead, he merely describes John Does 1–3 as police officers and "duly appointed and acting employee[s] of the City of New York and the NYDOC." *Id.* Plaintiff has thus neither exercised the diligence necessary to permit him to proceed against an unnamed defendant nor provided sufficient information so as to fairly apprise the true parties that they are the intended defendants. The Motion is therefore granted with respect to Claim Three and Claim Seven. *See Bumpus*, 883 N.Y.S.2d at 104 ("Any failure to exercise due diligence to ascertain the 'Jane Doe's' name subjects the complaint to dismissal as to that party. . . . An insufficient description [also] subjects the 'Jane Doe' complaint to dismissal for being jurisdictionally defective." (internal citations omitted)).

### 4. Claim Five

Plaintiff brings his fifth claim against the City for negligent supervision. FAC ¶¶ 70–72. Even assuming *arguendo* that Plaintiff has satisfied the elements of negligent supervision, his claim fails because the officers involved were plainly acting within the scope of their employment when they placed him in Five Upper North and transported him from his cell. *Rich v. Fox News Network, LLC*, 939 F.3d 112, 130 (2d Cir. 2019) ("Under New York law, an employee's tortious acts fall within the scope of his employment if 'done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'" (quoting *Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979))). While some courts have nonetheless permitted such claims in the case of punitive damages for gross negligence, *see* Pls.' Br. 16, Plaintiff has not alleged, and I cannot plausibly infer, that the officers' conduct amounted to gross negligence. The Motion is therefore granted with respect to Claim Five.

### 5. Claim Eight

Finally, Plaintiff brings his eighth claim against McQueen and Simmons for "Conspiracy Under NY State Law." FAC ¶¶ 80–83. Conspiracy, however, is not an independent cause of action under New York law. *Brady v. Friedlander*, 2021 WL 5872264, at *2 (2d Cir. Dec. 13, 2021). The Motion is therefore granted as to Claim Eight.

### CONCLUSION

For the reasons stated above, the Motion is DENIED with respect to Claim One and GRANTED as to Claims Two through Eight. Oral argument on Defendants' motion, currently scheduled for July 27, 2023, is canceled. The Clerk of the Court shall terminate the open motions (ECF Nos. 13 and 18). The City shall answer the FAC by June 29, 2023. The parties shall attend to initial disclosures and appear for an initial case management conference on July 14, 2023, at 10:00 am.

SO ORDERED.

Dated:   June 15, 2023
         New York, New York

/s/ ALVIN K. HELLERSTEIN
United States District Judge